*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* TEB.

UNPUBLISHED
January 22, 2026
11:32 AM

No. 374573
Lenawee Probate Court
LC No. 16-049751-MI

Before: GADOLA, C.J., and REDFORD and RICK, JJ.

PER CURIAM.

Respondent appeals as of right a January 2025 order for involuntary mental-health treatment. He argues that the probate court erred in entering this order because the treatment plan was inadequate and insufficiently detailed to meet the requirements of the Mental Health Code, MCL 330.1001 *et seq*. For the reasons discussed herein, we dismiss this appeal as moot.

## I. FACTUAL BACKGROUND

This case arises out of a series of orders for respondent to undergo involuntary mental-health treatment for schizophrenia. Respondent was first subject to civil commitment in 2016. In July 2024, the probate court found that respondent was reasonably expected to harm himself or others and ordered combined hospitalization and outpatient treatment for no more than 180 days. The order was set to expire on January 6, 2025.[1] On January 2, 2025, respondent's mother filed a petition requesting that respondent be committed to involuntary mental-health treatment. Respondent's mother believed that he was unable to meet his basic needs because of his mental illness. She stated that respondent had been diagnosed with schizophrenia but was not taking his medication. When she filed the petition, respondent had not slept for four days and was

---

[1] Respondent previously appealed the July 2024 order for involuntary mental health treatment. A panel of this Court found respondent's appeal to be moot because the order had expired and the January 2025 order was active. *In re TEB*, unpublished per curiam opinion of the Court of Appeals, issued May 27, 2025 (Docket No. 372913). Respondent thereafter appealed this Court's ruling to our Supreme Court. Leave to appeal remains pending.

"responding to internal stimuli . . . ." He was paranoid and believed that the government was "killing babies and hurting people." He had lost approximately 65 pounds over three months. Respondent's mother allegedly had not seen him eat for three weeks. Nevertheless, respondent did not believe that he had any issues with his mental health.

The probate court entered an order for examination and transport, finding that respondent presented a "substantial risk of significant physical or mental harm" to himself or others in the near future. Respondent was hospitalized the same day. He was thereafter examined by Dr. Thomas Osinowo, a psychiatrist. Dr. Osinowo found that respondent presented a serious risk of harm to himself or others and did not understand that he required mental health treatment. Respondent would not answer any questions and was "notably disorganized in his speech and thought process." Dr. Osinowo recommended a "combination of hospitalization and assisted outpatient treatment in the community. [Respondent] would need medications while he is in the hospital including injectable form of medications as clinically needed."

The probate court held a hearing on the petition on January 14, 2025. Dr. Osinowo testified that respondent was aggressive and volatile during his recent hospitalization. Respondent was given emergency medications to induce sleep, but refused medication for schizophrenia treatment. Respondent's mother informed Dr. Osinowo that respondent had previously taken the antipsychotic medication Fluphenazine, a generic form of a drug called Prolixin. Dr. Osinowo was willing to try respondent on Fluphenazine again, but noted that a number of other medications were also available to treat schizophrenia. In Dr. Osinowo's opinion, a court order for 60 days of hospitalization and 180 days of outpatient treatment was necessary. He did not see an alternative to hospitalization. Dr. Osinowo explained that he was hopeful that the full 60-day hospitalization would not be required, but stated that he needed time to start respondent on medication. Dr Osinowo believed there was a risk that respondent would continue to fight him about whether medication was necessary.

Respondent also testified at the hearing. He expressed concerns over the side effects of medication, stating that in the past, drugs designed to treat schizophrenia had made him suicidal, caused him to gain weight, and led him to abuse marijuana and alcohol. He stated, "I've tried 'em [sic] all, and I can honestly say they don't work, okay. They're not the solution, they're not the answer, and they definitely don't work, okay." When asked whether he believed he had a mental illness, respondent did not answer, instead stating that categorizing him as such was "labeling and racism at this point", and directing his counsel to a website that he claimed contained "evidence of court hearings that is going on in place about mind control, which you call Hollywood, or pseudo-science, which you obviously aren't informed very much in this little small town of yours."

The probate court found that a combination of hospitalization and outpatient treatment was appropriate for respondent. It thereafter entered an order requiring respondent's hospitalization for an initial period of up to 60 days, with assisted outpatient treatment to be supervised by the Lenawee Community Mental Health Authority. Respondent appealed to this Court. While his appeal was pending, the order expired. A second order for mental-health treatment was entered on June 30, 2025. Respondent did not appeal the June 2025 order, which has also expired.

## II. ANALYSIS

Respondent argues that the probate court abused its discretion by ordering his involuntary commitment and participation in inpatient and outpatient treatment in the January 2025 order. He maintains that the court did not adhere to the procedural requirements for entry of an order for involuntary mental health treatment. Respondent's appeal is moot.

Mootness is a threshold question that courts must address before reaching substantive issues. *Gleason v Kincaid*, 323 Mich App 308, 314; 917 NW2d 685 (2018). "[A] case becomes moot when an event occurs that makes it impossible for a reviewing court to grant relief." *In re Detmer/Beaudry*, 321 Mich App 49, 56; 910 NW2d 318 (2017). There are two primary exceptions to the mootness doctrine. First, if a court's judgment ordering involuntary mental health treatment "may have collateral legal consequences for a [party], the issue is not necessarily moot." *Id.* (alteration in original). However, "[w]hen no such collateral legal consequences exist, and there is no possible relief that a court could provide, the case is moot and should ordinarily be dismissed without reaching the underlying merits." *Id.* Second, "[w]hen a case presents an issue of public significance, and disputes involving the issue are likely to recur, yet evade judicial review, courts have held that it is appropriate to reach the merits of the issue even when the case is otherwise moot." *Id.*

The January 2025 order and the subsequent June 2025 order have both expired. Respondent points to no collateral legal consequences that might warrant judicial review of the January 2025 order. Indeed, even were we to address the merits of his appeal, respondent would still be subject to collateral legal consequences arising from the June 2025 order, which he elected not to appeal. Respondent likewise does not point to any issues in this matter that are of public significance and likely to recur while escaping judicial review. Under the circumstances, the appeal presents only abstract questions of law without any practical legal effect on an existing controversy. Because there is no relief that we can grant in this matter, we dismiss the case as moot.

Dismissed.

/s/ Michael F. Gadola
/s/ James Robert Redford
/s/ Michelle M. Rick